WAGNER v. CORN PRODUCTS REFINING CO.

District Court, D. New Jersey.   October 25, 1928.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Thomas G. Haight, of Jersey City, N. J., Edmund F. Driggs, of Brooklyn, N. Y., and Hans v. Briesen, of New York City, of counsel), for plaintiff.

Frank H. Hall, of Rockford, Ill. (Percival H. Truman, of Chicago, Ill., of counsel), for defendant.

RELLSTAB, District Judge. This is an action at law to recover damages for an alleged infringement of a patent which expired before the suit was begun. The patent is for a "process of manufacturing anhydrous grape sugar from corn and analogous farinaceous material." The defendant moves to strike out the complaint, because it fails to allege that the defendant was notified of the infringement.

The plaintiff concedes that, if such notice is required in the case of a process patent, the present action will not lie, as no notice of that character was given. Ordinarily, a conscious infringer of a process patent seeks to avoid detection. The more valuable the process, the greater the purpose and preparation of such an infringer to prevent discovery. Obviously, not only detection, but proof of infringement, is more difficult in the case of process than in that of other patents.

In the present case the alleged infringement was not discovered until after the patent sued upon had expired. Therefore, unless damages may be recovered for any infringement proven against the defendant, the plaintiff is remediless. Generally stated, a tort-feasor is liable in damages for his tort, without advance notice from the injured party.

R. S. §§ 4919 and 4921 (35 USCA §§ 67, 70), authorize the recovery of damages from infringers of patents. R. S. § 4900, however, imposes certain limitations on that right. This section reads:

"It shall be the duty of all patentees and their assigns and legal representatives, and of all persons making or vending any patented article for or under them, to give sufficient notice to the public that the same is patented; either by fixing thereon the word 'patent,' together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice: Provided, however, That with respect to any patent issued prior to April 1, 1927, it shall be sufficient to give such notice in the form following, viz.: 'Patented,' together with the day and year the patent was granted; and in any suit for infringement by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so 'patented.'" 44 Stat. p. 1058, c. 67 (35 USCA § 49).

The pertinent limitations relate to notice,

and the duty in respect thereto, as it affects the recovery of damages from an infringer, is alternative; generally to the public, or specifically to the individual wrongdoer. Both notices are not required; either one is sufficient.

As to the public, the notice to be given is by fixing on the "patented article" the word "Patented" and the date the patent was granted, "or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice." As to the individual, if the "patented article" is neither marked nor labeled, the infringer cannot be held liable in damages for his infringement, unless he continues "to make, use, or vend the article so patented" after he has been "notified of the infringement."

The duty to mark patented articles was first imposed by the Act of August 29, 1842, 5 Stat. 543, and was limited to such as were vended or offered for sale. But not until the passage of Act March 2, 1861, § 13, 12 Stat. 246, 249, was any limitation put on the injured party's right to recover damages. By that act he was deprived of that right, unless the person, making or vending the article patented, marked or labeled it, or gave the infringer actual notice of the infringement. This statute did not embrace all patented improvements. It expressly limited its application to "cases where an article is made or vended by any person under the protection of letters patent." Thus the matter stood until the passage of the act entitled "An act to revise, consolidate and amend the statutes relating to patents and copyrights," approved July 8, 1870. 16 Stat. 198. It is conceded that the statutes prior to this enactment did not apply to process patents, or where the patented article had not been manufactured.

However, defendant contends that section 38 of the 1870 act, now carried forward (with amendments not affecting the present question) as section 4900, R. S., includes process patents as well as articles not made or vended by the patentee. It is doubtful whether the changed phraseology, describing the persons upon whom the duty to mark and label was imposed, effects any legislative change whatever in that regard. See Dunlap v. Schofield, 152 U. S. 244, 247, 248, 14 S. Ct. 576, 38 L. Ed. 426. However, it is clear that section 4900, as well as its predecessors, imposing the duty to give notice, constructive or actual, is limited to tangible things, viz. "patented articles"—things that can be marked or labeled. A process, as ordinarily

understood, is not an article, and cannot be made to carry the prescribed notice. Its very character defies its being marked or labeled.

Just what induced Congress, when in 1870 it revised the statutes concerning patents, to change the phraseology in the particulars just referred to, does not legislatively appear. While the Congressional Record is replete with discussions and committee reports bearing on the reason for the proposed revision in other respects, there is nothing said or reported indicating why a change in the wording of section 13 of the 1861 act was desirable.

The revision (section 38) contained no change in regard to the kind or character of invention that was to be marked. The duty to mark or label was still limited to a "patented article." It did, however, change the phraseology characterizing the parties who were to give this notice. Section 13 of the 1861 act provided "that in all cases where an article is made or vended by any person under the protection of letters-patent, it shall be the duty of such person to give sufficient notice * * *"; while section 38 of the 1870 act provided "that it shall be the duty of all patentees, and their assigns and legal representatives, and of all persons making or vending any patented article for or under them, to give sufficient notice. * * *"

When the term "all patentees," in the existing act, is considered in connection with its immediate context, the futility of the defendant's contention is made manifest, for its application is limited to articles, or the containers thereof, which can be marked or labeled. This limitation does not point to a legislative purpose to include an invention incapable of being marked, and there is nothing in the clause following, declaring the consequences of failure to perform the enjoined duty, which calls for an interpretation that process patents are intended to be included. That is a dependent clause, and is not in the interest of the wrongdoer. That he is immune from damages in certain circumstances is but incidental. The legislative purpose disclosed in that clause is to enforce the duty imposed in the preceding clause, which is done by conditionally denying recovery of damages if it is not performed.

The alternative notice to the infringer is only in the event that the party required to mark or label shall fail "so to mark." The word "so" relates solely to the failure to mark the "patented article," or to label the package in which it is inclosed. It is the failure "so to mark" that entails such consequences. But, if it is impossible to mark or

label, where is the failure? The drastic consequence here imposed is not intended for those who cannot by any possibility perform the duty which this legislation requires, but for those only who could have performed and did not.

The use of the word "article," in the concluding clause of R. S. § 4900, also negatives the idea that process patents are within the legislative purpose, for it is not the infringer of every patented invention who is immune, in the absence of receiving actual notice of his infringement. The immunity extends only to those who infringe patented articles. To require a patentee, or one acting under him, to mark a patented article made, vended, or used by him, under pain of being remediless as to the recovery of damages, except as to those sustained after the infringer has been given actual notice of his infringement, inflicts no hardship. Not so, however, in the case of a process, which, as already noted, is incapable of being marked or labeled. If Congress had intended to include process patents within the prescribed duty of giving notice, one would expect to find words selected aptly to embrace them. These we do not find in R. S. § 4900. Indeed, in my judgment, the words of this enactment are so inept for that purpose that it should not be given the all-embracing grasp contended for by the defendant, unless the decisions interpreting it leave no alternative.

There are few reported cases dealing exclusively with process patents, and of these none was concerned with patents which had expired before suit brought. Of the cases cited by counsel, two only dealt with process claims. Both of these, founded on the same patent, are in this circuit—United States Mitis Co. v. Carnegie Steel Co. (C. C. W. D. Pa.) 89 F. 206, affirmed without opinion (C. C. A. 3) 90 F. 829, and United States Mitis Co. v. Midvale Steel Co. (C. C. E. D. Pa.) 135 F. 103. The patent considered in these two cases was for improvement in a process of manufacturing castings from wrought iron and steel, by adding aluminum. In the Carnegie Case, 89 F. 207, Judge Acheson said: "The patent in suit is exclusively for a process, and therefore the case is not within either the letter or the spirit of section 4900." In the Midvale Case, 135 F. 112, Judge Acheson's opinion was cited approvingly by Judge Archbald.

However, the decisions reached in these cases did not rest exclusively on this ground. The court in each case was of the opinion that the defendants, at any rate, were answerable in damages from the time the bill was filed, as they had persisted in the infringement after suit was brought; the bringing of suit being treated as the equivalent of the statutory notice. See, also, Judge Archbald's reference to this ground in American Caramel Co. v. Thomas Mills & Bro. (C. C. A. 3) 162 F. 147, 148. The affirmance of the Carnegie Case, 90 F. 829, without opinion, added little, if anything, to the authority of that case, as the affirmance of the lower court's decision might have been based on any of the reasons given by the District Court. However, the question whether section 4900 embraced process patents was directly in issue in both of the United States Mitis Co. Cases, and the courts' answers that it did not are not mere dicta, even though both courts found other grounds to sustain their decisions. See Railroad Companies v. Schutte, 103 U. S. 118, 143, 26 L. Ed. 327.

All the other cases cited by counsel as interpreting this section, dealt with patents covering machines or other tangibles which, if made, were capable of being marked. In only one of these, also in this circuit, Churchward International Steel Co. v. Bethlehem Steel Co. (D. C. E. D. Pa.) 262 F. 438, is there any intimation that process patents are within section 4900. In that case Judge Dickinson in the course of his opinion said:

"There are a number of cases which rule that the statute does not apply to process patents, because there is no patented article made or vended; but these cases will be found to have been so ruled before the act of 1870, or to have been ruled on the authority of these prior cases, without the change in the statute having been noted." Page 441.

What cases Judge Dickinson had in mind is not disclosed, but it is evident that the United States Mitis Co. Cases, supra, could not have been included, as both, as well as the cases cited therein on the point here considered, were decided after the passage of the Act of July 8, 1870. The patents considered by Judge Dickinson were for products termed "alloyed steels" (see Churchward International Steel Co. v. Bethlehem Steel Co. [D. C.] 260 F. 962, 963), and the question whether process patents were embraced in section 4900 was not in issue, and the quoted views of this learned judge are pure obiter.

The other cases cited by counsel—American Caramel Co. v. Thomas Mills & Bro. (C. C. A. 3) 162 F. 147; Son v. Pressed Steel Co. (D. C. S. D. N. Y.) 21 F.(2d) 528; Flat Slab Patents Co. v. Northwestern Glass Co. (C. C. A. 8) 281 F. 51; and Flat Slab Patents Co. v. Turner (C. C. A. 8) 285 F. 257—

dealt with mechanical patents; i. e., machine to cut caramels, door constructions, and metallic and concrete flooring, respectively.

In calling these cases to the attention of the court, counsel for the defendant stress some of the remarks made by the writers of the opinions filed therein, particularly those in the Flat Slab Patents Co. Cases, and argue therefrom that the reasoning employed carries process patents within the grasp of section 4900. It is true that some of the language employed in discussing the precise question there determined gives comfort to counsel in their purpose, but it does not support their contention. There is no affinity between the question raised there and the one here, and there is nothing in the controlling facts, or in the opinions of any of these four cases, that suggests that the writers of these opinions had, even remotely, process patents in mind.

However, while none of the cases cited and relied upon by counsel for the defendant dealt with process patents, the case of Parker Rust Proof Co. v. Ford Motor Co. (D. C. E. D. Mich.) 23 F.(2d) 502, is directly in point and supports the defendant's contention. In that case two of the four patent claims involved undoubtedly covered a process. Judge Tuttle applied R. S. § 4900, and denied the recovery of damages and profits prior to the time actual notice of infringement was given. So far as appears, the learned judge, in thus concluding, relied solely on Westinghouse Electric & Mfg. Co. v. Condit Electrical Mfg. Co. (C. C. S. D. N. Y.) 159 F. 154, and Muther v. United Shoe Machinery Co. (D. C. Mass.) 21 F.(2d) 773. These cases, however, did not involve processes, but mechanical devices, viz. circuit breakers and eyelet setting tools, respectively, and there is nothing in the judicial views expressed therein that suggests the thought that section 4900 embraced process patents.

For the reasons herein given, the defendant's motion is denied.